IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

JESSE M. BOWERS )
 )
v. ) No. 3-01-0488
 ) JUDGE CAMPBELL
SHEET METAL WORKERS' )
NATIONAL PENSION FUND )

MEMORANDUM

I. Introduction

Pending before the Court is Plaintiff's Motion For Judgment on the Administrative Record (Docket No. 71) and Defendant's Motion For Summary Judgment/Judgment on the Administrative Record (Docket No. 74). For the reasons set forth below, the Plaintiff's Motion is DENIED, and the Defendant's Motion is GRANTED.

II. Factual and Procedural Background

In a prior Memorandum and Order (Docket Nos. 30, 31), the Court determined that the Defendant's decision to deny disability benefits to Plaintiff was arbitrary and capricious, and by subsequent Order (Docket No. 38), remanded the matter to the Administrator of the Plan to determine the date Plaintiff became disabled under the definition set forth in the Plan, and in accordance with the Court's Memorandum and Order. The Defendant appealed the Court's Order, but the Sixth Circuit determined that the remand to the Administrator was not an appealable final decision, and dismissed the appeal. (Docket No. 44; Bowers v. Sheet Metal Workers' National Pension Fund, 365 F.3d 535 (6th Cir. 2004)).

Plaintiff subsequently amended his Complaint to challenge the Administrator's remand decision. (Docket No. 59). The Defendant has now filed a new Administrative Record (Docket No. 66), which includes the decision of the Administrator on remand. Review of that decision is

now presented to the Court through the pending motions.

In the prior Memorandum, the Court set forth the following factual and procedural background:

> Plaintiff filed this action under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001, et seq., against Defendant Sheet Metal Workers' National Pension Fund for wrongful denial of disability benefits (Complaint (Docket No. 1)).
>
> The Defendant is a multiemployer defined benefit pension plan established in 1966 by agreement between the Sheet Metal Workers' International Association and various employers ("the Plan"). The Plan is administered by a joint Board of Trustees, consisting of two union representatives and 2 representatives of the participating employers (Administrative Record, at 20 (hereinafter "AR")). The Plan provides for retirement and related benefits to eligible employees of contributing employers. (A.R., at 3-5).
>
> Plaintiff was employed as a sheet metal worker by various employers throughout the 1970's and 1980's. On September 11, 1986, the Plaintiff fell from a scaffold and suffered a skull fracture, along with back, shoulder and wrist injuries. (A.R., at 93-96, 103). Plaintiff applied to the Plan in June, 1987 for disability benefits. (A.R., at 100-105). The Plan rejected the application by letter dated November 18, 1987, stating that Plaintiff was not eligible for disability benefits because he had failed to earn 15 years of credited service as required by the Plan. (A.R., at 62). At that time, the Plan's records indicated that the Plaintiff had been credited with 14 years and 1 month of service. (Id.)
>
> Over the next several years, Plaintiff and his representatives sent numerous letters challenging the Plan's decision. During this time, the Plan credited the Plaintiff with additional service hours as Plaintiff advised the Plan of additional jobs he had held over the applicable period. (A.R., at 172-73, 179, 202–09, 211-12, 253). After these additions, the Plan calculated Plaintiff's total creditable service at 14 years and 10 months, and advised Plaintiff that he was still ineligible for a disability pension. (A.R., at 211-12, 253). By letter dated March 2, 2001, the Plan advised Plaintiff that its decision was final, and that he was not entitled to further appeals. (A.R., at 253).
>
> At the time of Plaintiff's injury, Section 5.10 of the Plan provided:
>
> A Participant shall be entitled to retire on a Disability Pension if he becomes permanently and totally disabled as hereinafter defined at a time when:

2

> (1) he has not attained age 65;
>
> (2) he has at least 15 years of Pension Credit;
>
> (3) he has at least 12 months of Future Service Credit; and
>
> (4) he worked in Covered Employment for at least 435 hours in the 24 month period that immediately preceded the date that he became permanently and totally disabled.

(A.R., at 40).

On February 14, 1988, the Trustees amended Section 5.10 of the Plan as follows:

> A Participant shall be entitled to retire on a Disability Pension if he becomes permanently and totally disabled (as hereinafter defined) after January 1, 1987 at a time when:
>
> (1) he has not attained age 65;
>
> (2) he has at least 10 years of Pension Credit;
>
> (3) he has at least 12 months of Future Service Credit;
>
> (4) he worked in Covered Employment for at least 435 hours in the 24 month period that immediately preceded the date that he became permanently and totally disabled; and
>
> (5) after September 1, 1988, he has not at any time performed any employment in the Sheet Metal Industry that was not covered by a collective bargaining agreement between the Union and the employer.

(A.R., at 60).

(Memorandum, at 1-3).

In the prior decision, the Court ruled as follows on the disability date:

> Plaintiff's argument regarding the date he became disabled under the terms of the Plan, however, does have merit. Plaintiff contends that he actually became disabled under the terms of the Plan after January 1, 1987. Consequently, the terms of the amended Plan, requiring only 10 years of Pension Credit, would

3

apply to him.

By letter dated March 3, 1987, Dr. Noel Tulipan, a neurologist who treated the Plaintiff after his accident, advised the Defendant that Plaintiff could return to work:
> Since six months has elapsed since his injury, we have jointly decided that Mr. Bowers should attempt to go back to work at this time. There are no particular restrictions on his activity except for the limitations related to his gait instability and hearing difficulty. It is not clear whether Mr. Bowers will be able to go back to his old job. In particular, I think that it would be dangerous for him to be working in a hard hat area or around heavy machinery until we have a better idea of what his impairment really is. He has requested that I write to you to see whether some intermediate form of work could be arranged until we can get some better idea of how he will be able to perform on the job. If such employment is unavailable, I have advised Mr. Bowers that he should consider looking to vocational rehabilitation in order to learn another more suitable trade. . .
>
> . . . He has been cleared by me to return to work on March 16th, but I strongly advise that he not be placed in an environment where his ongoing problems would possibly endanger him or his co-workers.

(A.R., at 95-96).

In response to this letter, on May 26, 1987, the Defendant notified the Plaintiff that he would not be permitted to return to work "as a sheet metal worker." (A.R., at 97). The Plan Trustees subsequently determined that Plaintiff became disabled as of the date of the accident in 1986 because he was thereafter "unable to return to work as a sheet metal worker." (A.R., at 122, 126-27).

Under the terms of the Plan, however, a person is disabled only if that person is "totally unable, as a result of bodily injury or disease, to engage in or perform the duties of a Sheet Metal Worker *or other employment in the Construction Industry* for remuneration or profit and is unable to earn more than $2,400 in a Calender Year from any employment whatsoever" and the disability is found to be "permanent and continuous for the remainder of [the person's] life." (A.R., at 10, 38). Defendant has cited no evidence that, prior to January 2, 1987, Plaintiff was unable to perform another job "in the construction industry."

Defendant's citation to forms completed by Plaintiff's various treating

4

physicians does not support such a decision. (A.R., at 71-73).[1] These forms state
the Plan's definition of "disability," provide a "no" and "yes" box for the
physician to check, and provide a line for "date applicant became disabled." (Id.)
They do not evidence any particular expertise on the part of the physicians as to
the availability of "other employment" in the construction industry to a person
with Plaintiff's limitations. Nor do they evidence any investigation by the
Defendant or anyone else as to the availability of such alternative employment.[2]

Under these circumstances, the Court concludes that Defendant's
determination that Plaintiff was "disabled," prior to January 2, 1987, under the
terms of the Plan, was arbitrary and capricious. Consequently, its determination
that the terms of the February, 1988 amendment did not apply to the Plaintiff was
also arbitrary and capricious.

(Memorandum, at 5-7).[3]

On remand, the Trustees repeatedly expressed disagreement with the Court's decision, which they construed to require that they "determine a date after January 1, 1987 on which Mr. Bowers became totally and permanently disabled, because the District Court found that it was arbitrary and capricious to conclude that Mr. Bowers became 'disabled' prior to January 2, 1987, under the terms of the Plan." (2004 A.R. 370). Nevertheless, the Trustees analyzed and

---

[1] The Court notes that one of the three physicians who completed a form, Dr. Gregorey Brick, actually marked the "no" box in response to the question whether Plaintiff met the definition of disability. (A.R., at 71).

[2] Defendant points out that Plaintiff received Social Security benefits based on a disability date of September 11, 1986. (A.R, at 98). Similarly, Plaintiff argues that Plaintiff's receipt of state unemployment benefits until November, 1987 (A.R., at 133-34) supports a later disability date, as the criteria for those benefits is that an employee must be able to work. See Tenn. Code Ann. § 50-7-302(a)(4). The Court finds neither position to be determinative as the parties have not shown the relevant definitions governing these benefits to be the same as those set forth in the Plan.

[3] The Court's actual holding was that the Trustees' decision was arbitrary and capricious because it did not *consider* the full definition of disability in fixing the disability date. The Court did not direct the Trustees as to which disability date it should choose after full consideration of the Plan's definition of disability and the facts presented in the record.

5

discussed various portions of the Administrative Record and the Plan's definition of permanent disability in reaching their determination that the Plaintiff became permanently disabled in May, 1988. (2004 A.R. 366, 372). Given this determination, the Trustees concluded that the Plaintiff failed to satisfy the Plan requirement that he accumulate 435 hours of covered employment within the 24-month period immediately preceding the date of disability. (2004 A.R. 366, 373). Consequently, the Trustees rejected Plaintiff's claim for disability benefits.

### III. Analysis

A. Standard of Review

ERISA does not set out the appropriate standard of review in actions challenging benefit determinations. In Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 109 S.Ct. 948, 956-57, 103 L.Ed.2d 80 (1989), the Supreme Court held that a denial of benefits challenged under Section 1132(a)(1)(B) of ERISA is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan. If the plan grants such discretionary authority, the Court explained, the reviewing court should use an arbitrary and capricious standard of review. Id.

The Plaintiff argues that the decision to deny his claim for disability benefits should be reviewed under a reasonableness standard because the terms of the Plan require the trustees to base their decisions on medical evidence.

Plaintiff cites Section 5.11 of the Plan, which provides, in pertinent part, that:

> A Participant shall be deemed permanently and totally disabled within the meaning of this Plan only if the Trustees, in their sole and absolute discretion, shall determine on the basis of medical evidence that . . .

(2004 A.R. 92).

Defendant contends, on the other hand, that the decision to deny Plaintiff's claim should be reviewed under an arbitrary and capricious standard of review. Defendant cites Section 9.03 of the Plan, which provides:

> The Trustees shall be the sole judge of:
>
> > (a) the standard of proof required in any case
> >
> > (b) the application and interpretation of this Plan
> >
> > (c) entitlement to or amount of a pension
> >
> > (d) the crediting of Future or Past Service and the decisions of the Trustees with respect to any of the foregoing shall be final and binding on all parties.

(2004 A.R., at 100).

In its prior Memorandum, the Court determined that this language meets the requirements set forth in <u>Bruch</u> for application of an arbitrary and capricious standard of review. The Court is not persuaded that the provisions of Section 5.11 change that determination. The medical evidence requirement is in the nature of other substantive terms of the Plan, which are to be applied by the Trustees in making decisions but are not relevant to determining the Trustees' level of discretion. Indeed, Section 5.11 itself states that the decision is within the Trustees' "sole and absolute discretion." Thus, the Court again applies the arbitrary and capricious standard of review.

In applying the arbitrary and capricious standard, the Sixth Circuit has stated: "[w]hen it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious." <u>McDonald v. Wester-Southern Life Insurance Co.</u>, 347 F.3d 161, 169 (6th Cir. 2003). The standard "requires that the decision 'be upheld if it is the

7

result of a deliberate principled reasoning process, and if it is supported by substantial evidence.'" Killian v. Healthsource Provident Administrators, Inc., 152 F.3d 514, 520 (6th Cir. 1998)(quoting Baker v. United Mine Workers of America Health & Retirement Funds, 925 F.2d 1140, 1144 (6th Cir. 1991)).

B. Application

Plaintiff argues that the Trustees' decision should not be upheld because it was not made "on the basis of medical evidence," as required by the Plan. Plaintiff contends that the Trustees rejected medical opinions favoring the Plaintiff without a reasoned basis. According to the Plaintiff, the Trustees relied on non-medical evidence to reach their decision, including letters received from Mrs. Bowers, the Plaintiff's wife, other cases that are not cited in the decision, their own personal experiences, as well as the Plaintiff's receipt of Social Security and unemployment benefits.

The Court is not persuaded that the Trustees' rejection of certain of the medical opinions fixing the date of disability was arbitrary and capricious. As pointed out in the Court's prior opinion, the forms completed by Drs. Tulipan and Kirschner in 1987 that set the date of disability as the date of injury, September 11, 1996, did not include the full definition of disability set forth in the Plan.[4] In subsequent letters submitted to the Trustees by Plaintiff's counsel, both physicians state that they would not have diagnosed the Plaintiff as having a permanent disability until approximately one year after the injury. They do not, however,

---

[4] As noted above, Section 5.11 of the Plan defines "permanent and total disability" as being "totally unable, as a result of bodily injury or disease to engage in or perform the duties of a Sheet Metal Worker or other employment in the Construction Industry for remuneration or profit" and "unable to earn more than $2,400 in a Calendar Year from any employment whatsoever." (2004 A.R. 92).

8

explain the reason for their change of opinion nor do these subsequent opinions discuss any specifics of the Plan's definition of disability. (2004 A.R. 332, 334). Consequently, the Trustees rejected the subsequent opinions as suffering from the same flaws as suffered by the earlier opinions. (2004 A.R. 365, 373).

As for other medical evidence, the Trustees found the September 16, 1987 letter from Dr. Gregory Brick, an orthopedic surgeon who treated the Plaintiff after the accident, suggested a disability date sometime after late 1987. In the letter, Dr. Brick stated:

> At present, Mr. Bowers says he is unable to return to his previous occupation as a laborer and from the orthopedic point of view, has reached maximum medical improvement.
>
> At present, I would be reticent to provide a disability rating for this patient who has a head injury and musculoskeletal problems, as he requires more objective assessment.
>
> I would recommend that he be referred to the Ability Assessment Center at Vanderbilt where a full analysis of his back and trunk musculature and an assessment of his ability to perform certain tasks, an occupational therapy assessment, and physical therapy assessment will be performed.

(2004 A.R. 146-47).

There is no suggestion that the Plaintiff ever underwent the assessment recommended by Dr. Brick. The Trustees concluded that Dr. Brick's inability to definitively find that the Plaintiff was unable to perform work in the construction industry or otherwise, as of September, 1987, supported a later date of disability. (2004 A.R. 371-72). The Court concludes that that decision was not arbitrary and capricious, and that the Trustees adequately evaluated the medical evidence submitted by the Plaintiff in reaching their decision.

The Court also concludes that the Trustees were not arbitrary and capricious in relying on other evidence to support a disability date of May, 1988. In arriving at that date, the Trustees

9

reviewed letters from the Plaintiff and his wife indicating that he was diagnosed as permanently disabled in 1988. The Trustees cited a June 3, 2000 letter from Mrs. Bowers in which she states that Mr. Bowers was diagnosed as permanently disabled in mid-1988. (2004 A.R.306, 365-66). The Trustees also noted that in a letter from the Plaintiff dated February 10, 2001, the Plaintiff states that he was diagnosed as permanently disabled in 1988, and certified for Social Security benefits based on his permanent disability diagnosis. (2004 A.R. 308, 365, 372). No medical record was provided by the Plaintiff reflecting this diagnosis. Relying on these documents and other evidence, the Trustees determined that May, 1988 was the date of disability under the Plan definition.

Despite Plaintiff's argument to the contrary, the Court is not persuaded that the Trustees' reliance on the statements of the Plaintiff or his wife as to the date he was diagnosed as disabled was arbitrary and capricious. That the Plaintiff failed to provide the Trustees with medical records reflecting that diagnosis does not prevent the Trustees from relying on the Plaintiff's statement in fixing a disability date.

Plaintiff's arguments that the record could also support the factual scenario he espouses – that he was seriously injured on September 11, 1986; he enjoyed a partial recovery that allowed him to return to work in May 1987; and later that year, his recovery faltered, at which point he became "Totally and Permanently Disabled" as defined by the Plan -- does not necessarily render the Trustees' decision arbitrary. The factual scenario Plaintiff espouses is not the only one supported by the inconsistent evidence set forth in the Administrative Record. Under these circumstances, application of an arbitrary and capricious standard of review requires that the Trustees' decision be upheld.

10

## IV. Conclusion

For the reasons set forth above, Defendant's Motion For Summary Judgment/Judgment on the Administrative Record is granted and Plaintiff's Motion For Judgment on the Administrative Record is denied.

It is so ORDERED.

*Todd Campbell*
TODD J. CAMPBELL
UNITED STATES DISTRICT JUDGE